**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JORGE NEWBERY, and BRIAN JANNONE, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SET FORTH, INC. and CENTREX SOFTWARE, INC.,<br><br>Defendants. | Case No.: 1:24-cv-12107<br><br>Jury Trial Demanded |

# CLASS ACTION COMPLAINT

Plaintiffs JORGE NEWBERY ("Newbery") and BRIAN JANNONE ("Jannone") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), bring this Class Action Complaint ("Complaint") against Defendants SET FORTH, INC. ("Forth") and CENTREX SOFTWARE, INC. ("Centrex") (collectively "Defendants"), to obtain damages, restitution, injunctive relief, and all other relief afforded by law or equity. Plaintiffs make the following allegations upon information and belief, their own personal knowledge, the investigation of counsel, and the facts that are a matter of public record.

## INTRODUCTION

1. Forth and Centrex provide cloud-based customer relationship management (CRM) solutions powered by the Forth platform.[1] This platform allows businesses to collect and share consumer information, with their permission, between its users.[2] As part of their business

---

[1] *See* https://www.setforth.com/notice-of-data-security-incident/ (last visited Nov. 19, 2024).
[2] *Id.*

operations, Defendants receive electronic files and documents that contain the personal information of thousands of people.

2. Forth and Centrex collected, digitized, aggregated, stored, shared, and failed and refused to protect the personally identifiable information ("PII") of consumers from known cyber threats. The PII affected includes names, addresses, Social Security numbers, and dates of birth of consumers, their spouses, co-applicants, or dependents.[3]

3. Defendants failed to comply with regulatory, ethical, and industry standards for cybersecurity and confidentiality of PII. Defendants failed to take the most basic security measures such as having strong web application firewalls, completing third-party penetration testing, maintaining sufficient full-time resources for security specific code reviews and anomalous system user/activity behavior, and failed to prevent, detect, and adequately respond to a foreseeable data breach carried out by cyber criminals. As a result, criminals gained access to Plaintiffs' and Class members' PII (the "Data Breach"). Defendants estimate that approximately 1.5 million people were affected by the Data Breach.

4. As a direct result of the Data Breach, Plaintiffs and Class members have suffered numerous actual and concrete injuries and will suffer additional injuries into the future. Plaintiffs seek damages and other legal and equitable relief for the following categories of harms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d) loss of time and loss of productivity heeding Defendants' warnings and following instructions in the Defendants' notices to take precautionary measures, including monitoring their financial account statements and credit reports for fraudulent or irregular activity; (e) financial costs incurred due to

[3] See Centrex's Notice of Data Security Incident to Jorge Newbery (address redacted), attached hereto as Exhibit A; see also Notice of Data Security Incident on Forth's website, attached hereto as Exhibit B.

actual identity theft; (f) the cost of future identity theft monitoring; (g) loss of time incurred due to actual identity theft; and (h) deprivation of the value of their PII.

5. Plaintiffs bring this class action against Defendants for Defendants' negligence, negligence *per se*, violation of the Illinois Personal Information Protection Act, 815 ILCS 530/1, *et seq*., and unjust enrichment. Plaintiffs seeks injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law.

## THE PARTIES

6. Plaintiff Newbery is a natural person and a citizen of Illinois with a residence in Barrington, Illinois.

7. Plaintiff Jannone is a natural person and a citizen of New Jersey with a residence in Somerset, New Jersey.

8. Defendant Centrex is a corporation organized under California law with its principal place of business in Costa Mesa, California.

9. Defendant Forth is a Delaware corporation with its principal place of business in Schaumburg, Illinois.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because this case is brought as a putative class action pursuant to Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendants, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds $5 million.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, Forth has its principal place

of business in this District, and Defendants' conduct has caused harm to Class members residing within this District.

## FACTUAL ALLEGATIONS

### *Defendants' Promises and Obligations Regarding Protection of PII*

12. Centrex is a financial technology (better known as fintech) company.[4]

13. Centrex promotes itself as providing fintech for a variety of uses:

> Here at Centrex we have created an ecosystem of fintech solutions that can be used to start, build, grow, and maintain your finance or fintech company. Our goal is to empower you to build strong tech foundations while creating more intelligent and engaging relationships with your customers using technology.
>
> The Centrex products include: CRM, loan origination, loan and advance servicing software, syndication management, white labeled mobile app, money manager, underwriting, Esign, and website smart app builder. The Centrex services include: fintech software consulting, admin retainer services, and managed data cloud.[5]

14. Centrex promotes the security of its CRM solutions.

> Here at Centrex Software we have security as a top priority to make sure your platform is safe and secure at all times. In order to make sure your clients also know about Centrex Software's security methods and how safe their personal and business information is, we have created a "Centrex Safe" seal that you can add to your website and/or marketing material and then link to this page. You can copy the seal image below and add it anywhere you would like to ensure your clients fully understand their data is secure.[6]

15. Forth is an account administrator and processor for clients who are enrolled in debt relief programs. Forth promotes itself with an emphasis on security and compliance:

---

[4] Fintech, the word, is a shortened combination of "financial technology." Fintech is used to describe new technology that seeks to improve and automate the delivery and use of financial services. At its core, fintech is utilized to help companies, business owners, and consumers better manage their financial operations, processes, and lives. *See* https://www.investopedia.com/terms/f/fintech.asp (last visited Nov. 19, 2024).

[5] *See* https://www.centrexsoftware.com/ (last visited Nov. 19, 2024).

[6] *See* https://www.centrexsoftware.com/security/ (last visited Nov. 19, 2024).

> Since our founding in 2009, **FORTH, Inc.** (Forth™ or Forth) (formerly Debt Pay Gateway and DebtPayPro) has been serving consumers who are exiting debt. With a focus on security, compliance and reliability, Forth has built trusted relationships with hundreds of thousands of consumers.[7]

16. Defendants' assurances of data security proved hollow, however, as demonstrated by the Data Breach.

17. Defendants obtained the PII of Plaintiffs and Class members from financial documents, and Defendants were required to keep the PII secure. The PII included their names, addresses, Social Security numbers, and dates of birth, which includes static information that does not change and can be used to commit myriad financial crimes as well as identity theft.

18. Defendants were entrusted with Plaintiffs' and Class members' PII and were required to keep it confidential, secure, and to implement and follow adequate and reasonable data collection, storage, and retention policies. Defendants maintained and stored the PII on their systems and networks that were inadequately protected and ultimately accessed without authorization by criminals in the Data Breach.

19. Defendants owed Plaintiffs and Class members numerous statutory, regulatory, ethical, contractual, and common law duties to safeguard and keep Plaintiffs' and Class members' PII confidential, safe, secure, and protected from unauthorized disclosure, access, dissemination, and theft.

***The Data Breach***

20. Defendants failed to prevent and detect the Data Breach. On May 21, 2024, Defendants discovered suspicious activity from an unauthorized user on the network.[8] Despite Defendants' knowledge of this suspicious activity, the criminal hackers gained access to

[7] *See* https://www.setforth.com/notice-of-data-security-incident/ (last visited Nov. 19, 2024).
[8] *See* Exhibit B.

documents on their systems, including business documents such as loan applications, credit reports, and bank statements.[9] The review of potentially impacted documents determined that the following data elements may have been contained in the documents: names, Social Security numbers, dates of birth, and addresses.[10]

21. Defendants failed to timely notify Plaintiffs and Class members of the Data Breach. Although, on July 1, 2024, Defendants determined that the criminals accessed the PII in the Data Breach, Defendants unreasonably delayed notifying Plaintiffs and Class members for more than four months, giving the criminals a head start to commit identity fraud, theft, and wreak havoc to Plaintiffs' and Class members' personal finances, identities, and accounts.

22. After an unreasonably long silence, on November 8, 2024, Defendants sent letters to Plaintiffs and Class members notifying them of the Data Breach.[11] The letter states that Defendants are "writing to let you know about a recent data security incident that may have impacted some or your information." Defendants state that they "take the privacy and security of your information seriously," apologize for any concern or inconvenience, and provide information about steps Plaintiffs and Class members can take to protect their information. The letter also states that the information affected in the Data Breach includes names, addresses, and Social Security numbers of consumers, their spouses, co-applicants, and dependents. The Notice of Data Security Incident posted by Forth on its website also states that dates of birth were in the impacted documents. *See* Exhibit B.

23. Currently, the full extent of the types of sensitive personal information, the scope of the Data Breach, and the details regarding how the Data Breach was carried out are all within

---

[9] *See* Exhibit A.
[10] *See* Exhibit B.
[11] *See* Exhibit A and Exhibit C.

the exclusive control of Defendants and their agents, counsel, and forensic security vendors at this phase of litigation. However, Plaintiffs and Class members are aware that the type of data set published now provides a one-stop shop for identity thieves to wreak complete havoc on their lives. Given the sensitivity and static nature of the information involved (*i.e.*, names, addresses, Social Security numbers, and dates of birth), and the criminal targeting and theft of this information, Plaintiffs and Class members have all experienced a materialized and imminent risk of identity theft.

24. Cybersecurity experts have concluded that the kind of information taken in the Data Breach "would make it possible for malicious actors to carry out phishing attacks, social engineering, or even identity theft and bank fraud."[12]

25. Forth submitted a copy of the notification letter to the Maine Attorney General's Office, and notified the Attorney General that approximately 1.5 million people nationwide were likely impacted by the incident.[13]

***The Data Breach Was Preventable***

26. Defendants could have prevented the Data Breach.

27. In their notice letter to Plaintiffs and Class members, Defendants explain "What We Are Doing" as a result of the Data Breach. *See* Exhibit A and Exhibit C. Defendants state:

> We want to assure you that Centrex/Forth is taking steps to minimize the risk of this happening in the future. Since the incident, Centrex/Forth has hardened its web application firewalls, completed additional third-party penetration testing, added additional full-time resources for security specific code reviews and anomalous system user/activity behavior, and enhanced other existing security controls.

---

[12] *See* https://www.bleepingcomputer.com/news/security/engineering-firm-parker-discloses-data-breach-after-ransomware-attack.

[13] *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/5c00fedb-134a-4436-b778-5df30b84cdab.html (last visited Nov. 19, 2024).

*See* Exhibit A and Exhibit C.

28. The steps that have been taken since the Data Breach are all steps that could have been taken prior to the Data Breach.

29. Defendants' negligence in safeguarding the PII of Plaintiffs and Class members was exacerbated by the repeated warnings and alerts directed to U.S. companies warning that they should protect and secure sensitive data.

***The Data Breach Was Foreseeable***

30. Data breaches are highly foreseeable. In 2023, 3,205 data breaches occurred.[14] Over 353 million individuals were affected in 2023 by data breaches, leakage, and exposure that resulted in access by an unauthorized threat actor. [15]

31. In light of the well-publicized data breaches targeting consumers' PII, Defendants knew or should have known that the PII that they collected and maintained would be targeted by cybercriminals.

32. Despite the well-known risks and reasonable and effective protections, Defendants inexplicably failed to implement industry standard security measures, and maintained PII in a manner they knew or should have known was vulnerable to access by cybercriminals.

33. Defendants were negligent and did not adequately prepare for this wholly foreseeable event; thus, allowing PII to be accessed by the criminals. Defendants breached their duties to take appropriate steps to protect Plaintiffs' and Class members' PII from being compromised and failed to adequately notify them that the Data Breach took place.

---

[14] *See* https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last visited Nov. 19, 2024).

[15] *See id.*

34. Unfortunately for Plaintiffs and Class members, their PII was not secured in the manner required by law that would have prevented the Data Breach.

35. What is worse, despite Defendants' obligations under the law to promptly notify affected individuals so they can take appropriate action, Defendants failed to promptly provide such notice in the most expedient time possible and without unreasonable delay.

***Defendants Violated Federal Trade Commission Guidelines***

36. Defendants also violated the duties applicable to them under the Federal Trade Commission Act (15 U.S.C. § 45, *et seq*.) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC, pursuant to that Act, has concluded that a company's failure to maintain reasonable and appropriate data security for sensitive personal information is an "unfair practice" in violation of the FTC Act.

37. As established by these laws, Defendants owed a duty to Plaintiffs and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants also owed a duty to Plaintiffs and Class members to provide reasonable security in compliance with industry standards and state and federal requirements, and to ensure that their computer systems, networks, and protocols adequately protected this PII and were not exposed to infiltration. This also included a duty to Plaintiffs and Class members to design, maintain, and test their computer systems to ensure that the PII was adequately secured and protected; to create and implement reasonable data security practices and procedures to protect the PII through processes that would detect a breach of their data security systems in a timely manner and to act upon data security warnings and alerts in a timely fashion; to disclose if their

computer systems and data security practices were inadequate to safeguard individuals' PII from unauthorized access; and to disclose in a timely and accurate manner when data breaches occurred.

38. Defendants also needed to segment data by, among other things, creating adequate firewalls and access controls so that if one area of the network is compromised, hackers cannot gain access to other portions of the system.

39. Defendants owed these duties to Plaintiffs and Class members because they were foreseeable and probable victims of any inadequate data security practices. Defendants affirmatively chose to design these systems with inadequate security. These affirmative decisions resulted in criminals successfully carrying out a cyberattack and accessing Plaintiffs' and Class members' PII, to the injury and detriment of Plaintiffs and Class members. By taking affirmative acts inconsistent with these obligations that left Defendants' computer systems and network foreseeably vulnerable to criminals, Defendants disclosed and/or permitted the disclosure of PII to unauthorized third parties. Defendants thus failed to preserve the confidentiality of PII that they were duty-bound to protect.

***Value of Personally Identifiable Information***

40. The PII of individuals is of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, it was reported in October 2019 that PII can be sold at a price ranging from $40 to $200.[16]

41. Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult

[16] *See* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Nov. 20, 2024).

for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[17]

42. It is incredibly difficult to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

43. Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[18]

44. According to a 2017 Javelin strategy and research presentation, fraudulent activities based on data stolen in data breaches that are between two and six years old had increased by nearly 400% over the previous four years.[19] Thus, an offer of identity theft protection services that is only for one year is not an adequate remedy or offer, even if it conducts dark web scanning.

---

[17] *See* https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Nov. 20, 2024).
[18] *See* http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Nov. 20, 2024).
[19] *See* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web (last visited Nov. 20, 2024).

45. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, only credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. A date of birth cannot be changed. Social Security numbers are difficult, if not impossible, to change.

46. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[20]

47. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

48. The fraudulent activity resulting from the Data Breach may not come to light for years.

49. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[21]

50. At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class members, including Social Security numbers and dates of birth, and of the foreseeable consequences that would occur if Defendants'

---

[20] *See* https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Nov. 20, 2024).

[21] *Report to Congressional Requesters*, GAO, at 29 (June 2007), available at: https://www.gao.gov /assets/gao-07-737.pdf (last visited Nov. 20, 2024).

network and data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class members as a result of a breach.

51. Plaintiffs and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and the Class are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

52. Defendants were, or should have been, fully aware of the unique type and the significant volume of data on their systems, amounting to millions of individuals' PII and, thus, the significant number of individuals who would be harmed by the exposure of the PII.

53. Plaintiffs' and Class members' PII will remain in circulation on the Internet for years, causing damage to Plaintiffs and Class members and breaching their confidentiality.

54. To date, Defendants have offered Plaintiffs and Class members only one year of identity theft detection services. *See, e.g.*, Exhibit A and Exhibit C. The offered service is wholly inadequate to protect Plaintiffs and Class members from the threats they face for years to come, particularly in light of the PII at issue here, and is not an adequate cure of the Data Breach.

55. Defendants have not provided sufficient information in their Data Breach notice letters such that Plaintiffs and Class members could understand and appreciate the full nature of the risk to them caused by Defendants' Data Breach, allowing them to make informed decisions about how to protect themselves and their PII.

56. The injuries to Plaintiffs and Class members were directly and proximately caused by Defendants' failures to implement or maintain adequate data security measures for the PII of Plaintiffs and Class members.

**PLAINTIFF NEWBERY**

57. Newbery is a resident and citizen of Illinois.

58. On or about November 18, 2024, Newbery received notice from Centrex that his PII had been improperly accessed by unauthorized third parties. *See* Exhibit A. This notice indicated that the PII affected as a result of the Data Breach includes names, addresses, and Social Security numbers of consumers, their spouses, co-applicants, and dependents. Forth has posted on its website a Notice of Data Security Incident that states birth dates were also included in the impacted documents. *See* Exhibit B.

59. Newbery is unsure exactly how Centrex obtained his PII and does not know exactly what documents Defendants have that contain his PII. Newbery did not, and would not have, authorized Defendants to use his PII for any non-business purpose.

60. As a result of the Data Breach, Newbery made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching the Data Breach; and reviewing financial, healthcare, and other accounts for any indications of actual or attempted identity theft or fraud. Newbery has spent several hours dealing with the Data Breach, valuable time Newbery otherwise would have spent on other activities, including but not limited to work or recreation.

61. As a result of the Data Breach, Newbery has suffered anxiety as a result of the release of his PII, which he reasonably believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his PII for purposes of identity theft and fraud. Newbery is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

62. Newbery suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendants obtained from Newbery; (b) violation of his privacy rights; and

(c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

63. As a result of the Data Breach, Newbery anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Newbery is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

**PLAINTIFF JANNONE**

64. Jannone is a resident and citizen of New Jersey.

65. On or about November 8, 2024, Jannone received notice from Forth that his PII had been improperly accessed by unauthorized third parties. *See* Exhibit C. This notice indicated that the PII affected as a result of the Data Breach includes names, addresses, and Social Security numbers of consumers, their spouses, co-applicants, and dependents. Forth has posted on its website a Notice of Data Security Incident that states birth dates were also included in the impacted documents. *See* Exhibit B.

66. Jannone believes Forth obtained his PII when he signed up for a debt settlement through Cordoba Legal Group. Forth was the third-party escrow agent for payments that Jannone paid to Cordoba Legal Group. Jannone did not authorize Force or Centrex to use his PII for any non-business purpose.

67. As a result of the Data Breach, Jannone has been a victim of attempted identity theft that occurred around the time period of the end of July 2024 to the beginning of August 2024. Unknown criminals used Jannone’s PII to either try to cash checks or open accounts at TD Bank, Discover Bank, and American Express. Jannone put a credit freeze on his accounts with Experian, Equifax and TransUnion because of the attempts of identity theft.

68. Additionally, since July 2024, Jannone has received numerous spam calls and emails.

69. As a result of the Data Breach, Jannone made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching the Data Breach; and reviewing financial, healthcare, and other accounts for any indications of actual or attempted identity theft or fraud. Jannone has spent several hours dealing with the Data Breach, valuable time Jannone otherwise would have spent on other activities, including but not limited to work or recreation.

70. As a result of the Data Breach, Jannone has suffered anxiety as a result of the release of his PII, which he reasonably believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his PII for purposes of identity theft and fraud. Jannone is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

71. Jannone suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendants obtained from Jannone; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

72. As a result of the Data Breach, Jannone anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Jannone is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ACTION ALLEGATIONS

73. Plaintiffs seeks to certify the following Class of similarly situated persons under Fed. R. Civ. P. 23:

> All individuals whose PII was accessed by unauthorized third parties in the Data Breach, including those individuals who received a Notice of Data Security Incident letter from Centrex and/or Forth.

74. Plaintiffs seeks to certify the following Illinois Subclass of similarly situated persons under Fed. R. Civ. P. 23:

> All Illinois residents whose PII was accessed by unauthorized third parties in the Data Breach, including those individuals who received a Notice of Data Security Incident letter from Centrex and/or Forth.

75. Excluded from the Class and the Illinois Subclass are Defendants' officers and directors; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class and Illinois Subclass are members of the judiciary to whom this case is assigned, their immediate families and members of their staff.

76. Plaintiffs reserve the right to amend or modify the Class and Subclass definition and/or create additional subclasses as this case progresses.

77. Numerosity. The members of the Class and Subclass are each so numerous that joinder of all of them is impracticable. While the exact number of Class and Subclass members is unknown to Plaintiffs at this time, Plaintiffs believe that the Class may consist of approximately 1.5 million persons based on Forth's submission to the Maine Attorney General's Office in response to the question about the total number of people affected. Plaintiffs believe the Illinois Subclass consists of thousands of members.

78. Commonality. There are questions of law and fact common to the Class and Illinois Subclass, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

(a) Whether Defendants unlawfully used, maintained, lost, or disclosed the PII of Plaintiffs, Class members, and Subclass members;

(b) Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

(c) Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

(d) Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

(e) Whether Defendants each owed a duty to Class and Subclass members to safeguard their PII;

(f) Whether Defendants breached each of their duties to Class and Subclass members to safeguard their PII;

(g) Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

(h) Whether Defendants should have discovered the Data Breach sooner;

(i) Whether Plaintiffs, Class members, and Subclass members suffered legally cognizable damages as a result of Defendants' misconduct;

(j) Whether Defendants' conduct was negligent;

(k) Whether Defendants breached a fiduciary duty and duties of confidentiality to Plaintiffs, Class members, and Subclass members;

(l) Whether Defendants violated the Personal Information Protection Act;

(m) Whether Defendants were unjustly enriched by unlawfully retaining benefits conferred upon them by, or on behalf of, Plaintiffs, Class members, and Subclass members; and

(n) Whether Plaintiffs, Class members, and Subclass members are entitled to damages, punitive damages, treble damages, and/or injunctive or other equitable relief.

79. Typicality. Plaintiffs' claims are typical of those of other Class and Subclass members because Plaintiffs' information, like that of every other Class and Subclass member, was compromised in the Data Breach.

80. Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Newbery will fairly and adequately represent and protect the interests of the members of the Illinois Subclass. Plaintiffs' counsel is competent and experienced in litigating class actions.

81. Predominance. Defendants have engaged in a common course of conduct toward Plaintiffs, Class members, and Subclass members, in that all of the PII of Plaintiffs, Class members, and Subclass members was stored within Defendants' network and systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Plaintiffs, Class members, and Subclass members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

82. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

83. Defendants have acted on grounds that apply generally to the Plaintiffs, Class members, and Subclass members as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a classwide basis.

## COUNT I
**Negligence**
**(on behalf of Plaintiffs and the Class)**

84. Plaintiffs re-allege and incorporate by reference all of the allegations in paragraphs 1-83 of the Complaint as if fully set forth herein.

85. Plaintiffs and Class members entrusted their PII to Defendants with the understanding and reliance upon Defendants to exercise reasonable care in the protection of their PII.

86. Defendants had a duty to take reasonable measures to protect the PII of Plaintiffs and Class members from unauthorized disclosure to third parties. This duty is inherent in the nature of the exchange of such PII.

87. Defendants have full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class members could and would suffer if the PII were wrongfully disclosed in a Data Breach.

88. Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, using, and retaining of the PII of Plaintiffs and Class members, without adequate data security, involved an unreasonable risk of harm to Plaintiffs and Class members.

89. Defendants each had a duty to exercise reasonable care in safeguarding, securing, retaining, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, design, configuring, maintaining, and testing Defendants' security protocols to ensure that the PII of Plaintiffs and Class members in Defendants' possession was adequately secured and protected within their systems and networks.

90. Defendants each had a duty to segregate sensitive PII from other portions of its platform, such as by using web application firewalls.

91. Defendants each had a duty to implement and maintain procedures to detect and prevent the improper access of PII.

92. Defendants each had a duty to use reasonable security measures as a result of the relationship that existed between Defendants and Plaintiffs and Class members. Plaintiffs and Class members entrusted Defendants with their confidential PII and relied upon Defendants to implement adequate data security and reasonable data retention policies.

93. Defendants were subject to an independent duty untethered to any contract between Defendants and Plaintiffs or Class members.

94. A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class members was reasonably foreseeable, particularly in light of Defendants' inadequate security practices, the detailed warnings published by governmental agencies, and news reports of other data breaches.

95. Plaintiffs and Class members were the foreseeable and probable victims of Defendants' inadequate and unreasonable data security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the PII, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII.

96. Defendants' conduct created a foreseeable risk of harm to Plaintiffs and Class members. Defendants failed to failed to implement reasonable industry standard measures to safeguard and secure Plaintiffs' and Class members' PII.

97. Plaintiffs and Class members had no ability to protect their PII that was in, and remains in, Defendants' possession, and no sign that Defendants were failing and refusing to implement and maintain reasonable data security practices over their PII until they received their notification letters.

98. Defendants were in a position to protect against the harm suffered by Plaintiffs and Class members as a result of the Data Breach.

99. Defendants had and continue to have a duty to adequately and timely disclose that the PII might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiffs and the Class members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII.

100. Defendants had a duty to employ proper procedures to prevent the unauthorized disclosure and unauthorized sharing of the PII to criminals.

101. Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiffs and Class members by failing to implement and maintain industry-standard protocols and to exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and Class members.

102. Defendants improperly and inadequately safeguarded the PII of Plaintiffs and Class members in violation of standard industry rules, regulations, and practices at the time of the Data Breach.

103. Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiffs and Class members by failing to have appropriate procedures in place to detect and prevent unauthorized access to the PII of Plaintiffs and Class members.

104. Defendants breached their duties to encrypt PII and to segregate it from other portions of its network.

105. Defendants, through their actions and/or omissions, unlawfully breached their duties to adequately and timely disclose to Plaintiffs and Class members the existence and scope of the Data Breach.

106. Defendants breached their duties to safeguard Plaintiffs' and Class members' PII by failing to retain such information in an encrypted form.

107. But for Defendants' wrongful and negligent breach of duties owed to Plaintiffs and Class members, the PII of Plaintiffs and Class members would not have been compromised.

108. There is a close causal connection between Defendants' failure to implement security measures to protect the PII of Plaintiffs and Class members and the harm, or risk of

imminent harm, suffered by Plaintiffs and Class members. The PII of Plaintiffs and Class members was accessed as the proximate result of Defendants' failures to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

109. As a direct and proximate result of Defendants' numerous negligent acts and omissions, Plaintiffs and Class members are at a substantial, impending, and imminent risk of identity theft, and they have been forced to take mitigation steps, thereby incurring costs, to ensure their personal and financial safety.

110. As Defendants instructed, advised, and warned in their notice letters, Plaintiffs and Class members must now closely monitor their financial accounts to guard against future identity theft and fraud. Plaintiffs and Class members have heeded such warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts included, and will include into the future, protective steps: *e.g.*, reviewing financial statements, changing passwords, and signing up for credit and identity theft monitoring services. The loss of time and other mitigation costs are tied directly to guarding against and mitigating against the imminent risk of identity theft.

111. As a direct and proximate result of Defendants' numerous negligent acts and omissions, Plaintiffs and Class members have suffered actual and concrete injuries and will suffer additional injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d) loss of time and loss of productivity heeding Defendants' warnings and following their instructions in the notice letter; (e) financial costs incurred due to actual or attempted identity theft; (f) the cost of future identity theft monitoring; (g) loss of time incurred due to actual or attempted

identity theft; (h) loss of time and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; and (i) and diminution of the value of their PII.

112. Additionally, as a direct and proximate result of Defendants' negligence, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in their continued possession. Plaintiffs and Class members are, therefore, also seeking injunctive relief for the continued risk to their PII, which remains in the possession of Defendants, and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to safeguard the PII.

113. As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members are entitled to recover actual and punitive damages.

**COUNT II**
**Negligence *per se***
**(on behalf of Plaintiffs and the Class)**

114. Plaintiffs re-allege and incorporate by reference all of the allegations in paragraphs 1-83 of the Complaint as if fully set forth herein.

115. "Section 5 of the FTC Act [15 U.S.C. § 45] is a statute that creates enforceable duties, and this duty is ascertainable as it relates to data breach cases based on the text of the statute and a body of precedent interpreting the statute and applying it to the data beach context." *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020). "For example, in *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015), the United States Court of Appeals for the Third Circuit affirmed the FTC's enforcement of Section 5 of the FTC Act in data breach cases." *Capital One*, 488 F. Supp. 3d at 407.

116. Plaintiffs' and Class members' PII was and is nonpublic personal information and customer information.

117. Plaintiffs and Class members are in the group of persons that the FTC Act was enacted and implemented to protect, and the harms they suffered in the Data Breach as a result of Defendants' violations of the FTC Act were the types of harm the statutes and regulations are designed to prevent.

118. As a direct and proximate result of Defendants' numerous negligent acts and omissions, Plaintiffs and Class members are at a substantial, impending, and imminent risk of identity theft, and they have been forced to take mitigation steps, thereby incurring costs, to ensure their personal and financial safety.

119. As a direct and proximate result of the conduct of Defendants that violated the FTC Act, Plaintiffs and Class members have suffered and will continue to suffer the foreseeable economic and non-economic harms as described herein.

120. As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members are entitled to recover actual and punitive damages.

## COUNT III
**Violation of Illinois Personal Information Protection Act, 815 ILCS 530/1, *et seq*.**
**(on behalf of Plaintiff Newbery and the Illinois Subclass)**

121. Plaintiff Newbery re-alleges and incorporates by reference all of allegations in paragraphs 1-83 of the Complaint as if fully set forth herein.

122. As a business that collects, handles, stores, and maintains patient information that is nonpublic and personally identifiable information, Defendants are data collectors within the meaning of Section 5 of the Illinois Personal Information Protection Act, 815 ILCS 530/1, *et seq.* ("PIPA").

123. Social Security numbers along with a person's name qualify as "Personal Information" under PIPA. *See* 815 ILCS 530/1.

124. As data collectors, Defendants are required to implement and maintain reasonable security measures to protect Plaintiff Newbery and Illinois Subclass members' PII from unauthorized access, acquisition, destruction, use, modification, or disclosure. 815 ILCS 530/45.

125. Defendants breached these duties and the applicable standards of care by:

- Failing to implement and maintain reasonable safeguards and procedures, to prevent the unauthorized disclosure of Plaintiff Newbery's and Illinois Subclass members' PII;
- Failing to monitor and detect their confidential and sensitive data environment(s) storing Plaintiff Newbery's and Illinois Subclass members' PII reasonably and appropriately in order to repel or limit the Data Breach;
- Failing to undertake reasonable and sufficient incident response measures to ensure that the cyberattack directed toward Defendants' sensitive information would be thwarted and not expose Plaintiffs' and Class members' PII;
- Failing to cure deficiencies in data security that allowed the suspicious activity to continue, and lead to access to Plaintiff Newbery's and Illinois Subclass members' PII;
- Failing to provide accurate, complete, and sufficiently detailed notification to Plaintiff Newbery and Illinois Subclass members regarding the circumstances of the Data Breach, its causes, its effects, the extent of the exposure of their PII, and details regarding the disposition of Plaintiff

Newbery's and the other Illinois Subclass members' PII at all times upon noting the suspicious activity and during the Data Breach.

126. Defendants failed to timely notify Plaintiff Newbery and Illinois Subclass members that their PII was accessed in the Data Breach. On May 21, 2024, Forth and Centrex discovered suspicious activity from an unauthorized user on their network and systems. On July 1, 2024, Defendants determined that the criminal hackers gained access to documents on their network and systems. Defendants waited until November 8, 2024 to mail a letter to Plaintiff Newbery and Illinois Subclass members. Defendants had all the information they needed to disseminate notification to Plaintiff Newbery and Illinois Subclass members on July 1, 2024, when they determined Plaintiff Newbery's and Illinois Subclass members' PII was accessed. Likely, notification could have been provided in mere days to all the individuals whose names and information was contained in the files that were accessed by the criminals. Instead, Defendants delayed notification for 4 years while cyber criminals were able to perpetrate fraud and attempted fraud unbeknownst to them for an additional four months after Defendants became aware of the Data Breach.

127. As a proximate result of Defendants' unfair acts and practices described above and the resulting injuries to Plaintiff Newbery and Illinois Subclass members, as herein alleged, Plaintiff Newbery and Illinois Subclass members have incurred damages.

128. As a direct and proximate result of Defendants' unlawful acts and omissions, Plaintiff Newbery and Illinois Subclass members have suffered actual and concrete injuries and will suffer addition injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of

identity theft; (d) loss of time and loss of productivity heeding Defendants' warnings and taking precautionary measures; (e) financial costs incurred due to actual identity theft; (f) the cost of future identity theft monitoring; (g) loss of time incurred due to actual or attempted identity theft; (h) loss of time and annoyance due to increased targeting with phishing attempts and fraudulent robo-calls; and (i) and diminution of the value of their PII.

129. Additionally, as a direct and proximate result of Defendant's unlawful conduct, Plaintiff Newbery and Illinois Subclass members have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in their continued possession. Plaintiff Newbery and Illinois Subclass members are, therefore, also seeking injunctive relief for the continued risk to their PII, which remains in the possession of Defendants, and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to safeguard the PII.

130. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Newbery and Illinois Subclass members are entitled to recover actual, consequential, punitive damages, as well as injunctive relief, and reasonable attorney's fees and costs, pursuant to 815 ILCS 505/10a and 815 ILCS 505/2z.

## COUNT IV
## Unjust Enrichment
## (on behalf of Plaintiffs and the Class)

131. Plaintiffs re-allege and incorporate by reference all of the allegations in paragraphs 1-83 of the Complaint as if fully set forth herein.

132. This claim is brought in the alternative to Plaintiffs' other claims at law.

133. On information and belief, Defendants received monies from or on behalf of Plaintiffs and Class members that they use, in part, to fund their business activities, including their data security measures. Thus, a benefit was conferred upon Defendants.

134. Defendants knew Plaintiffs and Class members, or others acting on their behalf, conferred a benefit which Defendants accepted. Defendants profited from these transactions and appreciated the benefits.

135. Defendants failed to provide reasonable security, safeguards, and protections to the PII of Plaintiffs and Class members.

136. Defendants should not be permitted to retain the monies provided by or on behalf of Plaintiffs and Class members because Defendants failed to implement appropriate data security measures and caused the Data Breach.

137. Defendants accepted and wrongfully retained these benefits to the detriment of Plaintiffs and Class members.

138. Defendants' enrichment at the expense of Plaintiffs and Class members is and was unjust.

139. As a result of Defendants' wrongful conduct, as alleged above, Plaintiffs and Class members seek restitution of the money paid to Defendants, and disgorgement of all profits, benefits, imposition of a constructive trust, and other compensation obtained by Defendants, plus attorneys' fees, costs, and interest thereon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class and Illinois Subclass, pray for judgment against Defendants and in Plaintiffs' favor, as follows:

(a) For an Order certifying this action as a Class action, and appointing Plaintiffs as Representative of the Class, and Plaintiff Newbery as Representative of the Illinois Subclass, and their counsel as Class Counsel;

(b) For an award of actual damages, compensatory damages, nominal damages, consequential damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

(c) For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiffs, Class members, and Illinois Subclass members, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs, Class members, and Illinois Subclass members;

(d) For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Data Breach;

(e) For equitable relief requiring restitution and disgorgement of any revenues wrongfully retained as a result of Defendants' wrongful conduct;

(f) Imposition of a constructive trust for the benefit of Plaintiffs, Class members, and Illinois Subclass members;

(g) For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

(h) Pre- and post-judgment interest on any amounts awarded; and,

(i) Such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Plaintiffs JORGE NEWBERY and BRIAN JANNONE, individually, and on behalf of all others similarly situated,

By: /s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr. (IL #6231944)
*tom@attorneyzim.com*

Sharon A. Harris
*sharon@attorneyzim.com*
Matthew C. De Re
*matt@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
www.attorneyzim.com

Marc E. Dann
Brian D. Flick
**DANNLAW**
15000 Madison Avenue
Lakewood, OH 44107
Phone: (216) 373-0539
Facsimile: (216) 373-0536
Email: notices@dannlaw.com

Counsel for Plaintiffs and the Putative Class and Illinois Subclass

257489

CENTREX

P.O. Box 989728
West Sacramento, CA 95798-9728

1099_257489

Jorge Newbery
REDACTED

REDACTED
Enrollment Code:
To Enroll, Scan the QR Code Below:
REDACTED

SCAN ME
Or Visit:
https://response.idx.us/forth

November 8, 2024

**NOTICE OF DATA SECURITY INCIDENT**

Dear Jorge Newbery,

Centrex Software, Inc. ("Centrex") is writing to let you know about a recent data security incident that may have impacted some of your information. We take the privacy and security of your information seriously, and sincerely apologize for any concern or inconvenience this may cause you. This letter contains information about steps you can take to protect your information, and resources we are making available to help you.

**Who is Centrex, Inc?**

Centrex provides cloud-based customer relationship management (CRM) solutions powered by the Set Forth platform. Centrex allows businesses to collect and share consumer information, with their permission, between its users.

**What Happened?**

In May 2024, Centrex identified suspicious activity on the network. We immediately implemented our incident response protocols, took steps to secure the network, and engaged independent computer forensic experts to assist us in conducting an investigation.

Unfortunately, the investigation determined that business documents (such as loan applications, credit reports, and bank statements) that may have contained personal information belonging to you, your spouse, a co-applicant, or a dependent may have been accessed during the incident. While there is no evidence that your specific information was misused, we want to make you aware of this incident out of an abundance of caution.

**What Information Was Involved?**

From our review, it appears that the name, address, and/or social security number of you, your spouse, a co-applicant, or a dependent may have been affected.

**What We Are Doing:**

We want to assure you that Centrex is taking steps to minimize the risk of this happening in the future. Since the incident, Centrex has hardened its web application firewalls, completed additional third-party penetration testing, added additional full-time resources for security specific code reviews and anomalous system user/activity behavior, and enhanced other existing security controls.

**EXHIBIT A**

In addition, we are offering you, your spouse, co-applicant, or dependent identity theft protection services through IDX for 12 months. With this protection, IDX will help you resolve issues if your identity is compromised.

**What You Can Do:**

Go to https://response.idx.us/forth or scan the QR code above and follow the instructions for enrollment using your Enrollment Code: ZB3BW5U8B6. Please note the deadline to enroll is February 8, 2025.

Activate the credit monitoring provided as part of your IDX identity protection membership. The monitoring included in the membership must be activated to be effective. Note: You must have established credit and access to a computer and the internet to use this service. If you need assistance, IDX will be able to assist you.

Contact IDX at 1-877-210-5107 to gain additional information about this event and speak with knowledgeable representatives about the appropriate steps to take to protect your credit identity.

If you discover any suspicious items and have enrolled in IDX identity protection, notify them immediately by calling or by logging into the IDX website and filing a request for help.

This letter also provides other precautionary measures you can take to protect your information. Additionally, you should always remain vigilant in reviewing your financial account statements and credit reports for fraudulent or irregular activity. Again, at this time, there is no evidence that your information has been misused. However, we encourage you to take full advantage of this service we are offering.

**For More Information:**

We sincerely apologize for any inconvenience this incident may cause you. If you have questions, please call 1-877-210-5107 Monday through Friday from 9 AM - 9 PM Eastern Time. Please have the IDX enrollment code ready.

Sincerely,

Centrex, Inc.

FORTH™

LOG IN

**Notice of Data Security Incident**

Set Forth, Inc. ("Forth") and Centrex Software, Inc. ("Centrex") are providing notice of a data security incident that may have impacted some of its clients' information. Forth and Centrex provide cloud-based customer relationship management (CRM) solutions powered by the Set Forth platform. This platform allows businesses to collect and share consumer information, with their permission, between its users.

**What Happened:**

On May 21, 2024, Forth and Centrex discovered suspicious activity from an unauthorized user on their systems. They immediately implemented their incident response protocols, began an investigation, and engaged independent computer forensic specialists to help. The investigation determined, on July 1, 2024, that the unauthorized user gained access to documents on their systems. The review of potentially impacted documents determined that the following data elements may have been contained in the documents: names, Social Security numbers, dates of birth, and addresses.

**What We Are Doing:**

Forth and Centrex have taken steps to prevent a similar incident from occurring in the future, including hardening web application firewalls, completing additional third-party penetration testing, adding additional full-time resources for security specific code reviews and anomalous system user/activity behavior, and enhancing other existing security controls. Forth and Centrex will also be mailing letters to impacted individuals with more information about the incident. If an individual's personal information was affected, credit monitoring and identity restoration services will be provided at no cost.

**What You Can Do:**

Individuals should remain vigilant for incidents of identity theft or fraud by reviewing bank accounts and other financial statements, as well as credit reports, for suspicious activity. Incidents of identity theft should be reported to law enforcement or the Attorney General. Recommendations by the Federal Trade Commission regarding identity theft protection and details on how to place a fraud alert or a security freeze on a credit file can be found at www.identitytheft.gov.

**For More Information:**

Individuals should contact (877) 210-5107 Monday through Friday from 9 am – 9 pm Eastern Time to determine whether they were affected by this incident or if they have any questions. Forth and Centrex take the need to protect the privacy and security of all information in their respective care very seriously, and deeply regret any inconvenience or concern that this matter may cause.



**FORTH for Consumers?**

**EXHIBIT B**

Click here

Forth, Inc. ©2024. All rights reserved. 1900 E Golf Road, Suite 550, Schaumburg, IL 60173

334246

FORTH™
P.O. Box 989728
West Sacramento, CA 95798-9728

Enrollment Code: REDACTED
To Enroll, Scan the QR Code Below:
REDACTED

SCAN ME
Or Visit:
https://response.idx.us/forth

1423_334246

Brian Jannone
REDACTED

November 8, 2024

## NOTICE OF DATA SECURITY INCIDENT

Dear Brian Jannone,

Set Forth, Inc. ("Forth") is writing to let you know about a recent data security incident that may have impacted some of your information. We take the privacy and security of your information seriously, and sincerely apologize for any concern or inconvenience this may cause you. This letter contains information about steps you can take to protect your information, and resources we are making available to help you.

**Who is Forth?**

Forth provides cloud-based customer relationship management (CRM) solutions. Forth allows businesses to collect and share consumer information, with their permission, between its users.

**What Happened?**

In May 2024, Forth identified suspicious activity on the network. We immediately implemented our incident response protocols, took steps to secure the network, and engaged independent computer forensic experts to assist us in conducting an investigation.

Unfortunately, the investigation determined that business documents (such as loan applications, credit reports, and bank statements) that may have contained personal information belonging to you, your spouse, a co-applicant, or a dependent may have been accessed during the incident. While there is no evidence that your specific information was misused, we want to make you aware of this incident out of an abundance of caution.

**What Information Was Involved?**

From our review, it appears that the name, address, and/or social security number of you, your spouse, a co-applicant, or a dependent may have been affected.

**What We Are Doing:**

**EXHIBIT C**

We want to assure you that Forth is taking steps to minimize the risk of this happening in the future. Since the incident, Forth has hardened its web application firewalls, completed additional third-party penetration testing, added additional full-time resources for security specific code reviews and anomalous system user/activity behavior, and enhanced other existing security controls.

In addition, we are offering you, your spouse, co-applicant, or dependent identity theft protection services through IDX for 12 months. With this protection, IDX will help you resolve issues if your identity is compromised.

**What You Can Do:**

Go to https://response.idx.us/forth or scan the QR code above and follow the instructions for enrollment using your Enrollment Code: PGTCTYFU54. Please note the deadline to enroll is February 8, 2025.

Activate the credit monitoring provided as part of your IDX identity protection membership. The monitoring included in the membership must be activated to be effective. Note: You must have established credit and access to a computer and the internet to use this service. If you need assistance, IDX will be able to assist you.

Contact IDX at 1-877-210-5107 to gain additional information about this event and speak with knowledgeable representatives about the appropriate steps to take to protect your credit identity.

If you discover any suspicious items and have enrolled in IDX identity protection, notify them immediately by calling or by logging into the IDX website and filing a request for help.

This letter also provides other precautionary measures you can take to protect your information. Additionally, you should always remain vigilant in reviewing your financial account statements and credit reports for fraudulent or irregular activity. Again, at this time, there is no evidence that your information has been misused. However, we encourage you to take full advantage of this service we are offering.

**For More Information:**

We sincerely apologize for any inconvenience this incident may cause you. If you have questions, please call 1-877-210-5107 Monday through Friday from 9 AM - 9 PM Eastern Time. Please have the IDX enrollment code ready.

Sincerely,

Set Forth, Inc.

334246

**Recommended Steps to help Protect your Information**

**1. Review your credit reports**. We recommend that you remain vigilant by reviewing account statements and monitoring credit reports. Under federal law, you also are entitled every 12 months to one free copy of your credit report from each of the three major credit reporting companies. To obtain a free annual credit report, go to www.annualcreditreport.com or call 1-877-322-8228. You may wish to stagger your requests so that you receive a free report by one of the three credit bureaus every four months.

You should also know that you have the right to file a police report if you ever experience identity fraud. Please note that in order to file a crime report or incident report with law enforcement for identity theft, you will likely need to provide some kind of proof that you have been a victim. A police report is often required to dispute fraudulent items. You can report suspected incidents of identity theft to local law enforcement or to the Attorney General.

**2. Place Fraud Alerts** with the three credit bureaus. If you choose to place a fraud alert, we recommend you do this after activating your credit monitoring. You can place a fraud alert at one of the three major credit bureaus by phone and also via Experian's or Equifax's website. A fraud alert tells creditors to follow certain procedures, including contacting you, before they open any new accounts or change your existing accounts. For that reason, placing a fraud alert can protect you, but also may delay you when you seek to obtain credit. The contact information for all three bureaus is as follows:

**Credit Bureaus**

| | | |
|---|---|---|
| Equifax Fraud Reporting | Experian Fraud Reporting | TransUnion Fraud Reporting |
| 1-866-349-5191 | 1-888-397-3742 | 1-800-680-7289 |
| P.O. Box 105069 | P.O. Box 9554 | P.O. Box 2000 |
| Atlanta, GA 30348-5069 | Allen, TX 75013 | Chester, PA 19022-2000 |
| www.equifax.com | www.experian.com | www.transunion.com |

It is necessary to contact only ONE of these bureaus and use only ONE of these methods. As soon as one of the three bureaus confirms your fraud alert, the others are notified to place alerts on their records as well.

You will receive confirmation letters in the mail and will then be able to order all three credit reports, free of charge, for your review. An initial fraud alert will last for one year.

**Please Note: No one is allowed to place a fraud alert on your credit report except you.**

**3. Security Freeze.** By placing a security freeze, someone who fraudulently acquires your personal identifying information will not be able to use that information to open new accounts or borrow money in your name. You will need to contact the three national credit reporting bureaus listed above to place the freeze. Keep in mind that when you place the freeze, you will not be able to borrow money, obtain instant credit, or get a new credit card until you temporarily lift or permanently remove the freeze. There is no cost to freeze or unfreeze your credit files.

**4. You can obtain additional information** about the steps you can take to avoid identity theft from the following agencies. The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them.

**California Residents:** Visit the Privacy Unit of the California Department of Justice (www.oag.ca.gov/privacy) for additional information on protection against identity theft.

**Kentucky Residents:** Office of the Attorney General of Kentucky, 700 Capitol Avenue, Suite 118 Frankfort, Kentucky 40601, www.ag.ky.gov, Telephone: 1-502-696-5300.

**Maryland Residents:** Office of the Attorney General of Maryland, Consumer Protection Division 200 St. Paul Place Baltimore, MD 21202, www.oag.state.md.us/Consumer, Telephone: 1-888-743-0023.

**New Mexico Residents**: You have rights pursuant to the Fair Credit Reporting Act, such as the right to be told if information in your credit file has been used against you, the right to know what is in your credit file, the right to ask for your credit score, and the right to dispute incomplete or inaccurate information. Further, pursuant to the Fair Credit Reporting Act, the consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information; consumer reporting agencies may not report outdated negative information; access to your file is limited; you must give your consent for credit reports to be provided to employers; you may limit "prescreened" offers of credit and insurance you get based on information in your credit report; and you may seek damages from a violator. You may have additional rights under the Fair Credit Reporting Act not summarized here. Identity theft victims and active duty military personnel have specific additional rights pursuant to the Fair Credit Reporting Act. You can review your rights pursuant to the Fair Credit Reporting Act by visiting www.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf, or by writing Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

**New York Residents:** the Attorney General may be contacted at: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; 1-800-771-7755; https://ag.ny.gov/.

**North Carolina Residents:** Office of the Attorney General of North Carolina, 9001 Mail Service Center Raleigh, NC 27699-9001, www.ncdoj.gov, Telephone: 1-919-716-6400.

**Oregon Residents:** Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301-4096, www.doj.state.or.us/, Telephone: 1-877-877-9392.

**Rhode Island Residents:** Office of the Attorney General, 150 South Main Street, Providence, Rhode Island 02903, www.riag.ri.gov, Telephone: 1-401-274-4400. A total of 4326 Rhode Island residents were notified of this incident.

**All US Residents:** Identity Theft Clearinghouse, Federal Trade Commission, 600 Pennsylvania Avenue, NW Washington, DC 20580, www.consumer.gov/idtheft, 1-877-IDTHEFT (438-4338), TTY: 1-866-653-4261.